UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALPHONSO WHIPPER,
    *Plaintiff*,

v.

RICHARD RUIZ, et al.,
    *Defendants*.

No. 3:18-cv-1143 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Alphonso Whipper is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs. After an initial review, the Court concludes that the complaint should be served on defendant Ruiz in his individual capacity and that all other claims against defendants Nurse Doe 1 and Nurse Doe 2 shall be dismissed.

### BACKGROUND

Whipper names three defendants: Dr. Richard Ruiz, Nurse Jane Doe 1, and Nurse Jane Doe 2. The claims concern Whipper's medical care at Cheshire Correctional Institution.

In September 2015, Whipper began working in the marker shop at Cheshire Correctional Institution. His job required him to lift heavy materials. Doc. #1, ¶ 8. In October 2015, he felt a "pop" in his right index finger and a "sting" in his right forearm and triceps. *Id.*, ¶ 9. The following morning, he experienced a loss of feeling in his finger and acute pain in his forearm and triceps. *Id.*, ¶ 10. Whipper submitted a sick call request on the advice of the block officer. *Id.*, ¶ 11.

In November 2015, Whipper saw defendant Doe 1, the sick call duty nurse. Whipper

described his injury and told Nurse Doe 1 that he was regaining some feeling in his finger but still experienced severe pain and soreness in his right forearm and triceps. Nurse Doe 1 told him that the injury was common at his age and that the pain would subside with proper rest. *Id.*, ¶ 12. In December 2015, Whipper submitted a second sick call request because the pain had not subsided, and his right arm was very weak. *Id.*, ¶ 13.

In January 2016, Whipper saw Nurse Doe 2 at sick call. He described his pain and stated that his shoulder was now also involved. *Id.*, ¶ 14. In March 2016, he met with Dr. Ruiz who stated that plaintiff "probably needs surgery" but "won't be given surgery" because of his age and length of sentence. *Id.*, ¶ 15. In addition, Dr. Ruiz stated that he would not request another surgery because Whipper previously had an expensive knee surgery. *Ibid.*

Dr. Ruiz acknowledged damage to Whipper's muscle but stated that, with proper rest, the arm would be "fully useful," and the pain would subside. Dr. Ruiz gave him a bottle of Tylenol and told him to buy more at the commissary. *Id.*, ¶ 16. The Tylenol did not provide relief. Whipper submitted requests to Dr. Ruiz from May 2016 until October 2016. All requests were ignored. *Id.*, ¶ 17.

In November 2016, Whipper was called to the medical unit for sick call. No treatment or medication was provided. He also noticed that the date on the sick call request he had submitted in September had been changed to November. *Id.*, ¶ 18.

In January 2017, a nurse interviewed Whipper in his housing unit. She tried to discredit his claims rather than treat his injury and told him she could do nothing for him. *Id.*, ¶ 19. Whipper reported the incident to the medical unit. *Id.*, ¶ 20. On January 13, 2017, he was called to the medical unit for treatment of a stomach condition. No treatment was provided for his arm.

*Id.*, ¶ 21. He then submitted a grievance. *Id.*, ¶ 22.

On February 7, 2017, Whipper met with Dr. Ruiz, who stated that nothing could be done because Whipper would not be provided surgery or pain medication. Dr. Ruiz explained that Whipper's muscle was permanently torn and, therefore, he would require medication permanently. Dr. Ruiz claimed he was doing Whipper a favor by not giving him medication, because his body would "get used to" any medication. When Whipper expressed fear of atrophy, Dr. Ruiz consented to order a neck x-ray. *Id.*, ¶ 23. Whipper stated he had no pain in his neck and had not injured any bones in his neck. He argued that he needed an MRI rather than an x-ray. Dr. Ruiz would not change the order. *Id.*, ¶ 24. The x-rays were taken the following day. *Id.*, ¶ 25.

In April 2017, Dr. Ruiz met with Whipper and told him there would be no surgery to repair the torn muscle. Whipper would have to treat his pain with Tylenol purchased at the commissary. Dr. Ruiz would not listen to his description of the pain or his statements that Tylenol was ineffective. *Id.*, ¶ 26. Following this visit, Whipper submitted an informal resolution form to the medical unit complaining about lack of treatment for his injury and pain. *Id.*, ¶ 27.

In the fall of 2017, Whipper was sent to UConn for a neurological screening to evaluate nerve damage. Dr. Ruiz told him he had suffered no nerve damage and could resume physical activity, which he had stopped completely following the injury. *Id.*, ¶ 28. Dr. Ruiz dismissed Whipper's concerns that his arm was weaker than usual and that he continued to experience pain. *Id.*, ¶ 29. Whipper tried to play basketball and began to exercise. *Id.*, ¶ 30. Then, in early winter 2017, he woke to severe pain in his right forearm, triceps, shoulder, and neck. He believed all the pain was related and submitted a sick call request. *Id.*, ¶ 31. When he was not called to the

medical unit for several weeks, he submitted a second request. *Id.*, ¶ 32.

In January 2018, a nurse told Whipper that she had put him on a list to see Dr. Ruiz and did not understand why he had not been called to the medical unit. *Id.*, ¶ 33. After 27 months of excruciating pain, Whipper filed a grievance. *Id.*, ¶ 34. He did not receive a response for thirty days, at which point he submitted a second grievance through the grievance coordinator. *Id.*, ¶ 35.

On February 26, 2018, Whipper asked Correctional Officer Dyendo to call the medical unit because he was in severe pain and had no medication. The medical unit told the officer to have Whipper submit a request. *Id.*, ¶ 36. He submitted a sick call request. *Id.*, ¶ 37. He also wrote to the mental health unit because he could not understand why his injury was being ignored. *Id.*, ¶ 38. On March 13, 2018, mental health staff said they could do nothing for him and suggested breathing exercises and mental distraction techniques to deal with the pain. *Id.*, ¶ 39.[1]

On April 9, 2018, Whipper met with a nurse named Chet in the medical unit. Although this was Whipper's third sick visit in five months, Chet assessed Whipper's injury as if he had never heard of it before. Chet told him that there may be no way to fix the muscle because of the time that had passed since the injury. Without consulting Dr. Ruiz, Chet gave Whipper a bottle of Tylenol. *Id.*, ¶ 40.

Whipper met again with Dr. Ruiz on May 10, 2018. Dr. Ruiz was annoyed with him but said he would put him "into ortho" if he wanted. Whipper responded that he was in severe pain and would not refuse any treatment or suggestions. *Id.*, ¶ 41. When Dr. Ruiz said that there was

---

[1] Because the statement of facts in Whipper's complaint appears to proceed in chronological order, it appears that Whipper's references in Paragraphs 39 to 41 to the year "2017" were intended to refer to the year "2018."

no nerve damage, Whipper interrupted and stated that there was no nerve damage at the time of the neurological consult. Since then, Whipper had followed Dr. Ruiz's recommendation to resume physical activity, and his injury had been aggravated. *Id.*, ¶ 42. Dr. Ruiz still did not provide any pain medication. *Id.*, ¶ 43.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater,* 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Whipper alleges that defendants were deliberately indifferent to his medical needs. The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious

5

medical needs of prisoners in their custody. *See Estelle v. Gamble*, 492 U.S. 97, 104 (1976). A prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an objective requirement—that the prisoner's medical need was sufficiently serious (*i.e.*, that the prisoner suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain). *See Spavone v. New York State Dep't of Corr. Serv's.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Second, there is a subjective requirement: that the defendant acted recklessly (*i.e.*, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action). *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or negligent medical malpractice; instead, a prisoner must show that the defendant acted with the equivalent of a criminally reckless state of mind with respect to the prisoner's medical needs. *See Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

As to the first and objective prong of Whipper's claim, Whipper has alleged sufficient facts to show that his medical need was sufficiently serious. He alleges serious compromise of his ability to use his arm and a great deal of pain. *See, e.g., McMillon v. Davidson*, 873 F. Supp. 2d 512, 514 (W.D.N.Y. 2012) ("Severe pain can itself constitute a serious medical need for Eighth Amendment purposes."); *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2008) (finding that severe pain and reduced mobility raise factual issues regarding seriousness of medical need).

As to the second and subjective prong, Whipper alleges sufficient facts (if true) to suggest that Dr. Ruiz did not act merely negligently but with deliberate indifference to

6

Whipper's medical condition. Dr. Ruiz acknowledged that he needed surgery on his arm but refused to schedule or request surgery because of his age, length of sentence, and the cost of prior surgical services he had already received. Dr. Ruiz provided only Tylenol for pain, even though Whipper told him that the medication gave him no relief. Dr. Ruiz otherwise refused to treat Whipper's arm. These facts tend to show that Dr. Ruiz was aware of and disregarded the risk of harm from a failure to provide required treatment. Whipper alleges a plausible deliberate indifference claim against defendant Dr. Ruiz.

Whipper alleges that he saw Nurse Doe 1 a single time, during his first visit to the medical unit in November 2015. Whipper told her that he was regaining feeling in his fingers but continued to experience pain and soreness in his arm. Nurse Doe 1 told him that the injury was common at his age and that the pain would resolve with proper rest. Based on the sparse facts alleged as to Whipper's one-time encounter with Nurse Doe 1, there is no basis to conclude that Nurse Doe 1 acted with deliberate indifference to Whipper's serious medical needs. At most, Whipper has alleged that Nurse Doe 1 was negligent by failing to recommend a different course of treatment.

Whipper also fails to state a plausible claim for relief against Nurse Doe 2. Whipper alleges only that he saw her on his second visit to the medical unit in January 2016 and told her that his injury was now affecting his shoulder in addition to his arm. Doc. #1 at 5. Whipper does not allege any other facts regarding this encounter, such as that Nurse Doe 2 failed to follow up on his injury or refer him to the doctor. Whipper saw Dr. Ruiz about two months after his visit with Nurse Doe 2. Nor is there any indication that Nurse Doe 2 is the same person as one of the nurses identified elsewhere in the complaint who is not named as a defendant. In the absence of

any specific allegations of deliberate indifference on the part of Nurse Doe 2, Whipper's claim against Nurse Doe 2 will be dismissed.

## CONCLUSION

The claims against defendants Doe 1 and Doe 2 and the request for declaratory relief are **DISMISSED** pursuant to 18 U.S.C. § 1915A(b). The case will proceed on the claim against Dr. Ruiz for deliberate indifference to a serious medical need.

The Court enters the following orders:

(1)  **The Clerk shall** verify the current work address of defendant Ruiz with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to him at the address provided within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If the defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)  **The Clerk shall** send plaintiff a copy of this Order.

(3)  **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)  The defendant shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. He also may include all additional defenses permitted by the Federal Rules.

(5)  Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the Court. As local court rules provide that discovery requests are not filed with the Court, discovery requests must be served on defendant's counsel by regular mail.

**SO ORDERED** this 2d day of January 2019 at New Haven, Connecticut.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge